618 S.E.2d 517

**Sharon Kay MARCUS, Individually and as Guardian of Tonya Lynn Marcus, a Protected Person; John William Marcus, Individually, and Christy Michele Marcus Page, Individually, Plaintiffs Below, Appellants**

**v.**

**Roger A. HOLLEY, Individually and/or as an Agent, Employee, Servant and/or Representative of Winans Sanitary Supply Co., Inc., a West Virginia Corporation; and John Doe(s), Individuals, and John Doe Company(ies), Corporation(s) and/or Other Entity(ies), Etc., Defendants Below, Respondents.**

No. 31872.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 23, 2005.

Decided May 11, 2005.

514

Robert M. Losey, Huntington, West Virginia, Attorney for the Appellants.

Anita R. Casey, Renatha S. Garner, MacCorkle, Lavender, Casey & Sweeney, P.L.L.C., Charleston, West Virginia, Attorneys for the Appellee, Roger A. Holley.

Thomas E. Buck, Mark A. Kepple, Bailey & Wyant, P.L.L.C., Wheeling, West Virginia, Attorneys for the Appellee, Winans Sanitary Supply Co.

William L. Mundy, Mundy & Nelson, Huntington, West Virginia, Attorney for the Appellee, Allstate Insurance Co.

ALBRIGHT, Chief Justice:

This is an appeal by John William Marcus, individually and as guardian of Tonya Lynn Marcus; Sharon Kay Marcus, individually; and Christy Michele Marcus Page, individually (hereinafter "Appellants"), from a decision of the Circuit Court of Cabell County granting summary judgment to the Appellees[1] in a motor vehicle collision case. The Appellants contend that the lower court erred in granting summary judgment to the Appellees. Upon thorough review of the briefs, arguments, and applicable precedent, we affirm the decision of the lower court.

## I. Factual and Procedural History

On March 13, 1997, Appellant Tonya Marcus was injured while she was riding as a passenger in an automobile driven by her co-worker and fiancé, Roger Holley, and owned by their employer, Winans Sanitary Supply. Ms. Marcus was employed by Winans Sanitary Supply as a part-time janitorial employee working approximately twenty hours per week. Employees of Winans Sanitary Supply routinely utilized their own personal vehicles while traveling to perform cleaning jobs for their employer. However, because Mr. Holley's vehicle was experiencing mechanical difficulties on March 13, 1997, Mr. Holley requested that his employer permit him to borrow a vehicle owned by the employer.

Subsequent to the completion of their work assignment on the day of the accident, Ms. Marcus and Mr. Holley began traveling back to their employer's location. A collision occurred as they were traveling northbound on Route 10 in Cabell County, West Virginia, severely injuring the Appellant. She remained in a coma for several weeks and suffers permanent brain damage with resulting psychological impairment.

The cause of the accident is ardently disputed. The Appellants contend that the accident was caused by mechanical problems with the employer's vehicle which had been previously reported to Supervisor Jim Bates. According to the Appellants, the brakes on the vehicle grabbed, and the vehicle also experienced possible steering and clutch problems. Evidence was also presented indicating that an unidentified/phantom white truck contributed to the accident. The Appellants further assert that the collision was caused in whole or in part by the reckless driving of Mr. Holley, in addition to the unsafe condition of the employer's vehicle. Mr. Dan Aerni, an engineer retained by the Appellants, opined that Mr. Holley was driving approximately forty-five to fifty-five miles per hour in a twenty-five mile per hour zone and that such speed and the winding roads contributed to the accident. Mr. Holley denies that he was speeding at the time of the accident.

Following discovery, the Appellees moved for summary judgment. Although the Appellants had not included a cause of action for deliberate intention in their complaint, they did raise the issue of deliberate intention in their response to the Appellees' motion for summary judgment. The lower court thoroughly evaluated the claims presented by the Appellants and thereafter granted summary judgment by order dated December 31, 2003. The Appellants now appeal the lower court's ruling of summary judgment to this Court, asserting two primary contentions: first, they claim that the lower court erred in granting summary judgment because genuine issues of material fact exist regarding a deliberate intention cause of action against the employer; and second, they claim that the lower court erred by finding that the immunity provided under the West Virginia Worker's Compensation system should apply to the facts and circumstances of this case in which the injured employee worked only part-time.

---

1. The Appellees include Roger A. Holley, individually and/or as an agent, employee, servant and/or representative of Winans Sanitary Supply Co., Inc.; Winans Sanitary Supply Co., Inc.; John Doe; Erie Insurance Company, Erie Insurance Property & Casualty Company, Erie Insurance Exchange; Allstate Insurance Company; General Accident Insurance Company of America and General Accident Fire & Life Assurance Corp.; Zurich–American Insurance Company of Illinois and Zurich–American Insurance Company.

## II. Standard of Review

 "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). This Court has consistently held that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). Further, "[s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 4, *Painter*, 192 W.Va. 189, 451 S.E.2d 755.

 Rule 56(e) of the West Virginia Rules of Civil Procedure provides, in pertinent part, as follows:

> When a motion for summary judgment is made and supported as provided. in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

This Court has observed that, in this context, the word "material" has been defined as one "that has the capacity to sway the outcome of the litigation under the applicable law." *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 60 n. 13, 459 S.E.2d 329, 337 n. 13. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also State ex rel. Abraham Linc Corp. v. Bedell*, 216 W.Va. 99, 110, 602 S.E.2d 542, 553 (2004).

 Syllabus point five of *Jividen v. Law*, 194 W.Va. 705, 461 S.E.2d 451 (1995) crystalizes this concept effectively, as follows:

Roughly stated, a "genuine issue" for purposes of West Virginia Rule of Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed "material" facts. A material fact is one that has the capacity to sway the outcome of the litigation under the applicable law.

This Court is also cognizant of the fact that although the nonmoving party is entitled to the most favorable inferences that may reasonably be drawn from the evidence, it "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985) (citation omitted). In *Gooch v. West Virginia Department of Public Safety*, 195 W.Va. 357, 465 S.E.2d 628 (1995), this Court explained that "[t]o meet its burden, the nonmoving party must offer 'more than a mere "scintilla of evidence" and must produce evidence sufficient for a reasonable jury to find in a non-moving party's favor.'" 195 W.Va. at 365, 465 S.E.2d at 636 (quoting *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505). Applying these standards of review, we address the merits of the case presently before this Court.

## III. Discussion

### A. Deliberate Intention

 The Appellants assert that summary judgment in favor of the Appellees was improper and allege that factual disputes exist concerning each element of the deliberate intention exception to the immunity afforded to employers under the West Virginia Workers' Compensation construct. The West Virginia statutory system is designed "to remove from the common law tort system all disputes between or among employers and employees regarding the compensation to be received for·injury or death to an employee except as herein expressly provided...." W.Va.Code § 23–4–2(d)(1) (2003) (Supp.

2004).[2] In a deliberate intention action, if the employee establishes that the employer acted with conscious, subjective deliberation, intentionally exposing the employee to a specific unsafe working condition, the employer loses the workers' compensation immunity and may be subjected to a cause of action for damages as if the Workers' Compensation Act "had not been enacted." W.Va.Code § 23–4–2(c) (2003) (Supp.2004). In full, that section states as follows:

> If injury or death result to any employee from the deliberate intention of his or her employer to produce the injury or death, the employee, the widow, widower, child or dependent of the employee has the privilege to take under this chapter and has a cause of action against the employer, as if this chapter had not been enacted, for any excess of damages over the amount received or receivable under this chapter.

"To establish 'deliberate intention' in an action under *W.Va.Code* § 23–4–2(c)(2)(ii) (1983), a plaintiff or cross-claimant must offer evidence to prove each of the five specific statutory requirements." Syl. Pt. 2, *Helmick v. Potomac Edison Co.*, 185 W.Va. 269, 406 S.E.2d 700 (1991); *see also Blake v. John Skidmore Truck Stop, Inc.*, 201 W.Va. 126, 493 S.E.2d 887 (1997); *Mayles v. Shoney's, Inc.*, 185 W.Va. 88, 405 S.E.2d 15 (1990). In establishing this specific standard through the statute, the legislature's stated intent was "to promote prompt judicial resolution of the question of whether a suit ... is or is not prohibited by the immunity" created in West Virginia Code § 23–2–6. W.Va.Code § 23–4–2(d)(1); *see also Erie Ins. Prop. and Cas. Co. v. Stage Show Pizza, JTS, Inc.*, 210 W.Va. 63, 71–72, 553 S.E.2d 257, 265–66 (2001).

▮ The Appellants in the case sub judice failed to include a deliberate intention cause of action within their complaint. They asserted the deliberate intention claim only in response to the Appellees' motion for summary judgment. In *Hutchison v. City of Huntington*, 198 W.Va. 139, 479 S.E.2d 649 (1996), this Court emphasized the enhanced burden upon a plaintiff in certain types of cases, explaining that "in civil actions where immunities are implicated, the trial court must insist on heightened pleading by the plaintiff." 198 W.Va. at 149, 479 S.E.2d at 659. In *Tolliver v. Kroger Co.*, 201 W.Va. 509, 498 S.E.2d 702 (1997), this Court addressed the specific requirement that a plaintiff clearly articulate a deliberate intention cause of action against the employer within the pleading. In syllabus point eight, the *Tolliver* Court recognized as follows:

> The legislature has plainly indicated the type of allegations which do not sustain a cause of action under W.Va.Code § 23–4–2(c)(2)(i) (1994), which specifically provides that a cause of action under its provision may not be satisfied by an allegation of (A) conduct which produces a result that was not specifically intended; (B) conduct which constitutes negligence, no matter how gross or aggravated; or (C) willful, wanton or reckless misconduct. The language of this provision demands overcoming a high threshold to establish a cause of action under W.Va.Code § 23–4–2(c)(2)(i).

▮ In *Tolliver*, the complaint alleged the following: " 'The plaintiff, Linda Sue Tolliver, was physically assaulted and battered by her supervisor, Terry Lucas, while she was an employee at the Barboursville store.' " 201 W.Va. at 523, 498 S.E.2d at 716. Mrs. Tolliver asked this Court to allow the language of her complaint to satisfy the specific deliberate intention pleading requirements of W.Va.Code § 23–4–2(c)(2)(i). The circuit court had found, as a matter of law, that the language failed to satisfy the deliberate intention pleading requirement.[3] This

---

**2.** West Virginia Code § 23–4–2 was amended in 2003. The portion of the statute at issue in the present case was previously designated as West Virginia Code § 23–4–2(c) and was redesignated as West Virginia Code § 23–4–2(d). Other than minor stylistic alterations, the language was not changed. We consequently refer to the statute by its current designation, West Virginia Code § 23–4–2(d).

**3.** In discussion of that issue, the *Tolliver* Court also indicated that the plaintiff could have remedied the defective pleading by including a prima facie showing of deliberate intention in the summary judgment response. 201 W.Va. at 523, 498 S.E.2d at 716. Upon examination of that contention, however, we find that it was not essential to the result reached in that case, was addressing a merely hypothetical situation, and

Court agreed, holding as follows in syllabus point nine:

> To properly plead a prima facie case under W.Va.Code § 23–4–2(c)(2)(i) (1994), the statute requires an employee set out *deliberate intention* allegations. Under the statute, *deliberate intention* allegations may only be satisfied where it is alleged an employer acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury.

*See also Johnson v. Mountaire Farms of Delmarva, Inc.*, 305 Md. 246, 503 A.2d 708, 712 (1986) ("To bypass the exclusivity provided by a workmen's compensation statute such as ours, the complaint must be based upon allegations of an intentional or deliberate act by the employer with a desire to bring about the consequences of the act"). In *Jones v. Wal–Mart Stores, Inc.*, 893 S.W.2d 144 (Tex.App.1995), the Texas Court of Appeals succinctly explained the rule that a deliberate intention cause of action must be presented *in the complaint*. In that case, the court affirmed a grant of summary judgment where the appellant had addressed a new theory of recovery in response to a motion for summary judgment but had failed to amend the pleading. The court held that a claim raised for the first time in response to a motion for summary judgment *does not* thereby become a part of the petition that the defendant must disprove. The court analyzed this issue as follows:

> In their sole point of error, appellants contend the trial court erred in granting appellees' motion for summary judgment. Although appellants concede in their brief that the Texas Workers' Compensation Act in this case preempts a suit for an employer's negligence, and for gross negligence, they argue that a cause of action for an intentional tort is not preempted by the act. Appellants contend that although the allegation of intentional tort was absent from their original petition, it was present in their response to appellees' motion for

summary judgment, and therefore, the trial court improperly prevented appellants from presenting their case to a jury by granting summary judgment for the appellees.

893 S.W.2d at 147. The Texas court rejected the Appellants' contention that presentation within the summary judgment response was sufficient and noted that a defendant-movant, in a motion for summary judgment, is only "required to meet the plaintiff's causes of action as they are pleaded, and to demonstrate that the plaintiff cannot prevail." *Id.* (citations omitted).

Federal courts also adhere to this rule, as illustrated by the Eighth Circuit Court of Appeals' decision in *Morgan Distributing Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992 (8th Cir.1989). In *Morgan*, the Eighth Circuit held that a brief in response to a motion for summary judgment cannot amend a complaint. 868 F.2d at 995 (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985).[4]

Likewise, this Court finds that the Appellants failed to adequately present a deliberate intention action for evaluation, since their allegations were not presented within their complaint and were forwarded only in their response to the motion for summary judgment. However, even if this Court were to find that the Appellants' claims of deliberate intention were properly raised, the Appellants' claims fail to satisfy the stringent requirements of West Virginia Code § 23–4–2, setting forth the standards by which a deliberate intent claim must be evaluated. That statute, in pertinent part, provides as follows:

> (c) If injury or death result to any employee from the deliberate intention of his or her employer to produce the injury or death, the employee, the widow, widower, child or dependent of the employee has the privilege to take under this chapter and

constituted dicta. *See In re Assessment of Kanawha Valley Bank*, 144 W.Va. 346, 382–83, 109 S.E.2d 649, 669 (1959) ("Obiter dicta or strong expressions in an opinion, where such language was not necessary to a decision of the case, will not establish a precedent").

4. We do not address the additional alternative, which was potentially available to the Appellants, of tendering an amended complaint to the lower court.

has a cause of action against the employer, as if this chapter had not been enacted, for any excess of damages over the amount received or receivable under this chapter.

(d)(1) It is declared that enactment of this chapter and the establishment of the workers' compensation system in this chapter was and is intended to remove from the common law tort system all disputes between or among employers and employees regarding the compensation to be received for injury or death to an employee except as expressly provided in this chapter and to establish a system which compensates even though the injury or death of an employee may be caused by his or her own fault or the fault of a coemployee; that the immunity established in sections six [§ 23–2–6] and six-a [§ 23–2–6a], article two of this chapter is an essential aspect of this workers' compensation system; that the intent of the Legislature in providing immunity from common lawsuit was and is to protect those immunized from litigation outside the workers' compensation system except as expressly provided in this chapter; that, in enacting the immunity provisions of this chapter, the Legislature intended to create a legislative standard for loss of that immunity of more narrow application and containing more specific mandatory elements than the common law tort system concept and standard of willful, wanton and reckless misconduct; and that it was and is the legislative intent to promote prompt judicial resolution of the question of whether a suit prosecuted under the asserted authority of this section is or is not prohibited by the immunity granted under this chapter.

(2) The immunity from suit provided under this section and under section six-a [§ 23–2–6a], article two of this chapter may be lost only if the employer or person against whom liability is asserted acted with "deliberate intention". This requirement may be satisfied only if:

(i) It is proved that the employer or person against whom liability is asserted acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee. This standard requires a showing of an actual, specific intent and may not be satisfied by allegation or proof of: (A) Conduct which produces a result that was not specifically intended; (B) conduct which constitutes negligence, no matter how gross or aggravated; or (C) willful, wanton or reckless misconduct; or

(ii) The trier of fact determines, either through specific findings of fact made by the court in a trial without a jury, or through special interrogatories to the jury in a jury trial, that all of the following facts are proven:

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer had a subjective realization and an appreciation of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;

(C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless thereafter exposed an employee to the specific unsafe working condition intentionally; and

(E) That the employee exposed suffered serious injury or death as a direct and proximate result of the specific unsafe working condition.

(iii) In cases alleging liability under the provisions of paragraph (ii) of this subdivision:

(A) No punitive or exemplary damages shall be awarded to the employee or other plaintiff;

(B) Notwithstanding any other provision of law or rule to the contrary, and consistent with the legislative findings of intent to promote prompt judicial resolution of issues of immunity from litigation under this chapter, the court shall dismiss the action upon motion for summary judgment if it finds, pursuant to rule 56 of the rules of civil procedure that one or more of the facts required to be proved by the provisions of subparagraphs (A) through (E), inclusive, paragraph (ii) of this subdivision do not exist, and the court shall dismiss the action upon a timely motion for a directed verdict against the plaintiff if after considering all the evidence and every inference legitimately and reasonably raised thereby most favorably to the plaintiff, the court determines that there is not sufficient evidence to find each and every one of the facts required to be proven by the provisions of subparagraphs (A) through (E), inclusive, paragraph (ii) of this subdivision; and

(C) The provisions of this paragraph and of each subparagraph thereof are severable from the provisions of each other subparagraph, subsection, section, article or chapter of this code so that if any provision of a subparagraph of this paragraph is held void, the remaining provisions of this act and this code remain valid.

The Appellants in the present case have responded to the Appellees' motion for summary judgment by raising the deliberate intention issue under West Virginia Code § 23–4–2(d)(2)(ii) and have therefore presented evidence in an attempt to demonstrate the existence of the particular factors outlined in that portion of the statute. The Appellees, contending that the elements necessary for a claim of deliberate intention have not been sufficiently demonstrated by the Appellants, sought summary judgment as contemplated in West Virginia Code § 23–4–2(d)(2)(iii)(B), which provides in pertinent part, as quoted above:

[C]onsistent with the legislative findings of intent to promote prompt judicial resolu-

tion of issues of immunity from litigation under this chapter, the court shall dismiss the action upon motion for summary judgment if it finds, pursuant to rule 56 of the rules of civil procedure that one or more of the facts required to be proved by the provisions of subparagraphs (A) through (E), inclusive, paragraph (ii) of this subdivision do not exist. . .

"Thus, in order to withstand a motion for summary judgment, a plaintiff must make a prima facie showing of dispute on each of the five factors." *Mumaw v. U.S. Silica Co.*, 204 W.Va. 6, 9, 511 S.E.2d 117, 120 (1998). We address each of the statutorily required components separately below.

### 1. Specific Unsafe Working Condition

■ The Appellants contend that the Winans' vehicle and Mr. Holley's operation thereof created a specific unsafe working condition. In syllabus point three of *Blevins v. Beckley Magnetite, Inc.*, 185 W.Va. 633, 408 S.E.2d 385 (1991), this Court explained as follows:

Given the statutory framework of W.Va. Code §§ 23–4–2(c)(2)(i) and (ii), (1983, 1991) which equates proof of the five requirements listed in W.Va.Code § 23–4–2(c)(2)(ii) with deliberate intention, a plaintiff attempting to impose liability on the employer must present sufficient evidence, especially with regard to the requirement that the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and the strong probability of serious injury or death presented by such specific unsafe working condition. This requirement is not satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong probability of serious injury or death presented by that condition. Instead, it must be shown that the employer actually possessed such knowledge.

This Court also addressed the issue of specific unsafe working conditions in *Mayles*, a case in which the plaintiff had been required to carry a hot bucket of grease out of the restaurant and down a steep grassy slope. 185 W.Va. at 90, 405 S.E.2d at 17.

The restaurant manager had allegedly been aware of such condition but had not acted to alter the situation. This Court concluded that the subjective realization requirement was demonstrated in *Mayles* by evidence showing that the restaurant maintained a "do everything right now policy"; that management realized that hot grease was being disposed of improperly; that other employees had informed management that the disposal method was unsafe; and that another employee been injured in a similar manner. 185 W.Va. at 94–95, 405 S.E.2d at 21–22.

In *Deskins v. S.W. Jack Drilling Co.*, 215 W.Va. 525, 600 S.E.2d 237 (2004), this Court evaluated the evidence presented by the appellant in an attempt to establish the existence of a specific unsafe working condition and reasoned as follows:

> In the case at bar, the appellant has not presented any evidence to show that the appellees possessed actual knowledge that their employees were improperly supervised and that there was a high degree of risk and a strong probability of serious injury. To be specific, the appellant has produced no evidence of prior injuries, employee complaints, or citations from any regulatory or governmental agency arising from the use of a dozer to set up the pipe rack and pipe tub or the lack of supervision during that operation. The appellant simply has not offered any evidence remotely suggesting that the appellees knew that their supervision of the appellant or any of their employees was inadequate. At best, the appellant might be able to prove ordinary negligence on the part of the appellees. However, "[t]he 'deliberate intention' exception to the Workers' Compensation system is meant to deter the malicious employer, not to punish the stupid one." *Helmick v. Potomac Edison Co.*, 185 W.Va. 269, 274, 406 S.E.2d 700, 705 (1991).

215 W.Va. at 531, 600 S.E.2d at 243.

In the present case, the lower court found that "the mechanical defects, *even if they existed*, as alleged by the plaintiff, may create some degree of risk, but certainly do not create a high degree of risk or strong probability of serious injury or death." The lower court therefore concluded that the Appellants failed to present adequate evidence to allow a jury to conclude that Winans had a "subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition" as required by statute. Additionally, it was not a working condition for Ms. Marcus to ride in that employer-owned vehicle with Mr. Holley. Mr. Holley only borrowed that vehicle from Winans on the day in question because his own personal vehicle was experiencing mechanical problems. Based upon this Court's review of this issue, we agree with the lower court that the Appellants failed to establish a specific unsafe working condition.

### 2. Other Statutory Requirements

In *Deskins*, this Court explained that the absence of one of the five necessary statutory factors renders summary judgment appropriate.

> In conclusion, we believe the circuit court properly found that the evidence was simply inadequate to create an issue of fact regarding the appellees' subjective realization of the specific unsafe working condition. As discussed above, a deliberate intention action must be dismissed upon a motion for summary judgment when one or more of the facts required to be proved by the provisions of W.Va.Code § 23–4–2(c)(2)(ii)(A)–(E) does not exist. Therefore, the circuit court did not err by granting summary judgment in favor of the appellees.

215 W.Va. at 531, 600 S.E.2d at 243. Thus, pursuant to the reasoning of *Deskins*, the remaining four factors in the present case do not require evaluation. Based upon this Court's conclusion that the Appellants failed to establish the existence of a specific unsafe working condition, the employer's subjective realization of such condition becomes an irrelevant factor. As the lower court stated in the summary judgment order, "[f]urther, if the Court were to assume there was a subjective realization, there is nothing to support there was an appreciation of the existence of a specific and unsafe working condition and

the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition." We consequently find no merit in further examination, due to the failure to establish the existence of a specific unsafe working condition. Based upon the foregoing, we affirm the decision of the lower court that the Appellants failed to satisfy the requirements of the statutory deliberate intention claim.

## B. Part-Time Employment Status

The Appellants also assert the following assignment of error: "Alternatively, the trial court committed error when it found that the West Virginia Workers' Compensation bar applied to the facts and circumstances involved herein where Tonya Lynn Marcus is forever prevented from being made whole for her injuries." The Appellants did not include this challenge in their complaint, raising it only in response to the Appellees' motion for summary judgment. The Appellants claim that the application of the workers' compensation statutory scheme violates Ms. Marcus' right to equal protection, due process, and/or a certain remedy. The Appellants contend that the workers' compensation system is inequitable to the extent that it allows Ms. Marcus to receive wage replacement as a part-time employee. The Appellants contend that this system constitutes a violation of equal protection by treating part-time employees differently than full-time employees.

In addressing the Appellants' arguments, the lower court explained as follows:

This Court does not find that status as a part-time employee places an individual within a protected class. This Court finds that Workers' Compensation benefits are based in part upon the quarterly earnings of employees who are organized into classes of part-time and full-time employees. Further, there does not appear to be any difference in the medical benefits paid regardless of whether an employee is part-time or full-time. Further, even if part-time employees were in fact different classes, there has been no showing that such a classification would be irrational. Rather, such a classification appears to be a rational one based upon social, economic and historic factors. Further, such classification has a reasonable relationship to a proper governmental purpose.

As this Court has consistently held, an analysis of a workers' compensation case commences with a recognition of the remedial nature of the program: "The Workmen's Compensation Law is remedial in its nature, and must be given a liberal construction to accomplish the purpose intended." Syl. Pt. 3, *McVey v. Chesapeake & Potomac Tel. Co.*, 103 W.Va. 519, 138 S.E. 97 (1927).[5] Addressing the proper evaluation of a challenge to the constitutionality of a legislative enactment, this Court explained as follows in syllabus point two of *West Virginia Public Employees Retirement System v. Dodd*, 183 W.Va. 544, 396 S.E.2d 725 (1990), *overruled on other grounds by Booth v. Sims*, 193 W.Va. 323, 456 S.E.2d 167 (1995):

"In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. [*W.Va. Const.* art. V, § 1.] Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt." Syl. pt. 1, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W.Va. 740, 143 S.E.2d 351 (1965).

---

5. Subsequent to the occurrences in the case sub judice, the Legislature included statutory language which clearly undertakes to limit the rule of liberality in substantive application. Such language may also impact the general rules regarding liberal construction of statutory enactments, an issue we do not presently address. *See* W. Va.Code § 23-4-1g (2003) (Supp.2004); W. Va.Code § 23-1-1(b) (2003) (Supp.2004).

In light of such guidelines, we examine the Appellants' claims of denial of equal protection, due process, and absence of a certain remedy separately below.

## 1. Equal Protection

■ Equal protection of the law is guaranteed by Article III, Section 10 of our state constitution, which provides as follows: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." This Court has observed that "[t]he scope of our state equal protection concepts 'is coextensive [with] or broader than that of the fourteenth amendment to the United States Constitution.'" *Lewis v. Canaan Valley Resorts, Inc.*, 185 W.Va. 684, 691, 408 S.E.2d 634, 641 (1991) (quoting Syl. Pt. 3, in part, *Robertson v. Goldman*, 179 W.Va. 453, 369 S.E.2d 888 (1988)).

■ In syllabus point two of *Israel v. West Virginia Secondary Schools Activities Commission*, 182 W.Va. 454, 388 S.E.2d 480 (1989), this Court observed that "[e]qual protection of the law is implicated when a classification treats similarly situated persons in a disadvantageous manner. The claimed discrimination must be a product of state action as distinguished from a purely private activity." In *Lewis*, this Court explained the three types of equal protection analyses. "First, when a suspect classification, such as race, or a fundamental, constitutional right, such as speech, is involved, the legislation must survive 'strict scrutiny,' that is, the legislative classification must be necessary to obtain a compelling state interest. *Deeds v. Lindsey*, 179 W.Va. 674, 677, 371 S.E.2d 602, 605 (1988)." 185 W.Va. at 691, 408 S.E.2d at 641. In the second type of analysis, "a so-called intermediate level of protection is accorded certain legislative classifications, such as those which are gender-based, and the classifications must serve an important governmental objective and must be substantially related to the achievement of that objective." *Id.*, 408 S.E.2d at 641. "Third, all other legislative classifications, including those which involve economic rights, are subjected to the least level of scrutiny, the traditional equal protection concept that the legis-

lative classification will be upheld if it is reasonably related to the achievement of a legitimate state purpose." *Id.*, 408 S.E.2d at 641.

■ In like fashion, the United States Supreme Court has explained that the rational basis test requires that the "classification must be rationally related to a legitimate governmental purpose." *Clark v. Jeter*, 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988). A reviewing court should not overturn a statute under the rational basis test " 'unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes' " that the court may only conclude that the law is irrational. *Gregory v. Ashcroft*, 501 U.S. 452, 471, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) (quoting *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979)). In scrutinizing the legitimacy of the governmental purpose, a legislature need not " 'actually articulate at any time the purpose or rationale supporting its classification.'" *Heller v. Doe*, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 15, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992)). Instead, the classification is to be upheld by the judiciary if there is "any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (quoting *Federal Communications Commn. v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)).

■ Thus, the rational basis test essentially directs that a classification, in order to be sustained under an equal protection analysis, must bear a rational relationship to a legitimate governmental objective. Dealing specifically with economic rights, this Court established the following guideline in syllabus point one of *State ex rel. Boan v. Richardson*, 198 W.Va. 545, 482 S.E.2d 162 (1996):

Where economic rights are concerned, we look to see whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relationship to a proper governmental purpose, and whether all persons within the class are treated equal-

ly. Where such classification is rational and bears the requisite reasonable relationship, the statute does not violate Section 10 of Article III of the West Virginia Constitution, which is our equal protection clause.

198 W.Va. at 546–47, 482 S.E.2d at 163–64 (additional citations omitted). Consequently, the four required elements encompassed within *Boan* may be dissected as follows: (1) rational classification based upon social, economic, historic or geographic factors; (2) a proper governmental purpose; (3) the classification's reasonable relationship to that purpose; and (4) equal treatment of all persons within the class. This Court will address those four elements as they relate to the subject matter currently under consideration.

### a. Rational Classification Based on Social, Economic, Historic or Geographical Factors

The Appellants challenge what they perceive to be a classification of workers as part-time or full-time for purposes of calculating workers' compensation benefits. We note at the outset, however, that the record reveals that Ms. Marcus received full medical benefits in the same manner that a full-time employee would have received such medical benefits. West Virginia Code § 23–4–6d(c)(2003) (Supp.2004) provides: "Notwithstanding any other provisions of this article to the contrary, benefits payable to a part-time injured employee for any permanent disability shall be computed and paid on the same basis as if the injured employee is not a part-time employee within the meaning of this section."[6] Thus, that portion of her workers' compensation recovery cannot be said to be affected by her part-time employment status.

Ms. Marcus also received a permanent disability award, and those benefits were calculated based, in part, upon Ms. Marcus' average weekly wage earnings. Because she was a part-time employee, her average weekly wage earnings were obviously less than the earnings of a full-time employee. Based

upon that disparity, the Appellants raise the constitutional challenge alleging an improper statutory distinction between part-time employees and full-time employees.

This Court has consistently recognized that "the classification process is peculiarly a legislative function." *O'Dell v. Town of Gauley Bridge*, 188 W.Va. 596, 602, 425 S.E.2d 551, 557 (1992). The United States Supreme Court expressed this view in *Schweiker v. Wilson*, 450 U.S. 221, 234, 101 S.Ct. 1074, 67 L.Ed.2d 186, (1981) (quoting *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 314, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976)): "'This inquiry employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classification is neither possible nor necessary.'" (Citation omitted).

In *Lee v. Job Service North Dakota*, 440 N.W.2d 518 (N.D.1989), the North Dakota court determined that a distinction between full-time college students and other individuals was appropriate and that disqualification of a full-time college student for unemployment benefits possessed a rational relationship to legitimate governmental interests. Thus, the court found no violation of equal protection. 440 N.W.2d at 520. Similarly, in *Naiden v. Epps*, 867 P.2d 215 (Colo.App. 1993) the court found no equal protection violation in a statutory scheme which distinguished between employees working forty or more hours or five or more days per week and those who worked less regularly. Where employees worked more extensively, the employer was required to secure disability compensation for those workers. Employers of domestic workers with less regular employment did not need to do so. *Id.* at 216. In its analysis, the Colorado Court noted that "equal protection is not violated merely because imperfect classifications are embodied in laws, even if classification results in some inequality." *Id.*

■ In the case sub judice, we find no merit in the Appellants' claims of improper

---

**6.** Again, the version of this statute in effect on the date of Ms. Marcus' injury was identical to the above-quoted version.

classification of Ms. Marcus as a part-time employee. First, there is no overt legislative preference for full-time employees and no reference to the issue of whether an employee is employed full-time or part-time. That distinction is by implication only, by virtue of the fact that a disability award is, in fact, based partially upon the employee's average weekly earnings. Thus, to the extent that an implied distinction does exist between full-time and part-time employees, or between high and low wage earners, we view such delineations as inherent in the process and arguably essential to the process of establishing a permanent award. As discussed in the following section, addressing the governmental purpose served by the legislation, the formula for achieving a fair permanent award must be based, in part, upon actual earnings. We consequently find that any classification of Ms. Marcus based upon her lower earnings or her part-time status was rationally based on economic reality.

b. Proper Governmental Purpose

█ West Virginia Code § 23–4–14(a) (2003) (Supp.2004) provides that "[t]he average weekly wage earnings ... of the injured person at the date of injury and the average weekly wage in West Virginia as determined by the commission, in effect at the date of injury, shall be taken as the basis upon which to compute the benefits."[7] This method of computation was selected by the legislature in an effort to procure a fair and accurate determination of the appropriate amount of benefits to compensate an injured worker. In syllabus point three of *Repass v. Workers' Compensation Division*, 212 W.Va. 86, 569 S.E.2d 162 (2002), this Court recognized the difficult task faced by the legislature and explained as follows:

The ultimate responsibility for the fiscal health of the West Virginia Workers' Compensation system rests with the Legislature. Balancing the conflicting goals of minimizing premiums while providing full and fair compensation to injured workers is the exclusive province of our publicly

elected legislators, and is not to be invaded by the Commissioner, or the Courts.

It has also been observed that in the process of determining whether a legitimate governmental purpose exists, "the court may even hypothesize the motivations ... to find a legitimate objective." *Malmed v. Thornburgh*, 621 F.2d 565, 569 (3d Cir.1980) *cert. denied*, 449 U.S. 955, 101 S.Ct. 361, 66 L.Ed.2d 219.

The legislature is charged with the responsibility to provide an orderly method of calculating expenditures from the workers' compensation system, designed to compensate injured workers as equitably as possible. The rational basis for expenditures was accepted as a legitimate governmental purpose in *Zaidins v. Village of Hastings–on–Hudson*, 171 A.D.2d 875, 567 N.Y.S.2d 801 (1991). In that case, the Village had denied health insurance benefits to part-time employees, treating full-time employees differently from part-time employees for purposes of retirement insurance coverage. The reviewing court found no violation of due process, reasoning that the methodology reflected "an orderly and rational basis" for determining municipal expenditures. 567 N.Y.S.2d at 802.

In *Boan*, this Court recognized that "workers' compensation benefits *in part* 'replace' wages lost by reason of not working because of injury...." 198 W.Va. at 550, 482 S.E.2d at 167. Intrinsically, then, such benefits are "measured, at least in part, by past wages earned." *Id.*, 482 S.E.2d at 167. We find that the proper governmental purpose existent in the present case is the legitimate goal of preserving the fiscal integrity of the Workers' Compensation Fund. We find no error in the lower court's conclusion that this legitimate governmental interest was served by the legislature's authorization of a particular method by which compensation due to injured workers should be calculated. *See State ex rel. Beirne v. Smith*, 214 W.Va. 771, 591 S.E.2d 329 (2003).

**7.** The worker's compensation statutory scheme was amended in 2003, as referenced above. The version of West Virginia Code § 23–4–14(a) in effect upon Ms. Marcus' date of injury was identical to the above-quoted version.

### c. Reasonable Relationship to Governmental Purpose

Having determined that a rational classification and a proper governmental purpose exist, we now address the reasonable relationship between the classification and the purpose. This type of issue was raised and resolved effectively in *Pacific Wire Works, Inc. v. Department of Labor and Industries of·State of Washington,* 49 Wash.App. 229, 742 P.2d 168 (1987). The court held that an employer had not been denied equal protection by the Department of Labor and Industries' application of a regulation regarding classification of employees by occupation with regard to hazard, for purposes of workers' compensation premiums. *Id.* at 174. The court found that the department had engaged in identical application to all businesses, that reasonable grounds for such application existed, and that classifying employees according to risk of duties was consistent or had rational relationship to the purpose of maintaining actuarial solvency of the workers' compensation system. *Id.; see also Courtney v. State Dept. of Health of West Virginia* 182 W.Va. 465, 471, 388 S.E.2d 491, 497 (1989) (holding that "the economic distinction between employees terminated from employment due to a 'reduction of work force' and employees who are 'compelled or required by law to retire before reaching the age of sixty-five' bears a 'rational relationship to legitimate state purposes' ").

In *Idaho Department of Employment v. Smith,* 434 U.S. 100, 98 S.Ct. 327, 54 L.Ed.2d 324 (1977), the United States Supreme Court held that day students could be validly denied unemployment benefits, reasoning as follows:

> In a world of limited resources, a State may legitimately extend unemployment benefits only to those who are willing to maximize their employment potential by not restricting their availability during the day by attending school. Moreover, the classification serves as a predictable and convenient means for distinguishing between those who are likely to be students primarily and part-time workers only secondarily and thus ineligible for unemployment compensation and those who are primarily full-time workers and students only secondarily without the necessity of making costly individual eligibility determinations which would deplete available resources. The fact that the classification is imperfect and that the availability of some students desiring full-time employment may not be substantially impaired by their attendance at daytime classes does not, under the cases cited *supra,* render the statute invalid under the United States Constitution.

*Id.* at 101–02.

In *Naiden,* the Colorado Court of Appeals explained that "because there is a rational purpose for distinguishing between full-time and casual employees, the fact that the line drawn by the General Assembly may result in some specific instances of inequality does not invalidate the statute." 867 P.2d at 217. *See also Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) (quoting *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369 (1911)) (where classification has some reasonable foundation it does not offend the Constitution simply because it " 'is not made with mathematical nicety or because in practice it results in some inequality' ").

■ The West Virginia Legislature has determined that a permanent disability award should be premised, at least to some degree, upon the past wages of the individual to whom compensation is provided. The fact that a part-time or low-paid employee may earn less than a full-time employee does not create an equal protection violation. Ms. Marcus' benefits were rationally and reasonably calculated based upon West Virginia Code § 23–4–14(a), utilizing Ms. Marcus' average weekly wage earnings, as well as the average weekly wage in West Virginia. We find that determination of permanent awards based, in part, upon earnings of the injured employee is rational and bears the requisite reasonable relationship to a proper governmental purpose.

### d. Equal Treatment of All Persons Within the Class

The final *Boan* element requires this Court to examine whether all persons within

the "class" of part-time or lower paid employees are treated equally. Based upon our review of this matter, we conclude that the workers' compensation statutory system handles all employees identically in the calculation of benefits; benefits are simply paid based upon quarterly earnings of the employee and the average weekly wage in West Virginia. This statutory scheme protects against unfairness toward the part-time worker or low income wage earner to a certain extent by compensating a part-time employee on the basis of a constructed weekly wage, rather than exclusively on the basis of his actual wages. No distinctions are made within the group of part-time or lower paid employees.

Consequently, we find that the workers' compensation statutory mechanism for determining compensation for injured workers is properly premised upon a rational classification based on economic factors.

### 2. Due Process

■■■■ Having established that the worker's compensation system for the determination of part-time employees' benefits does not violate equal protection, we also address the Appellants' claim that application of the workers' compensation statutory construct to Ms. Marcus' injury violated her constitutional right to due process. As quoted above, the West Virginia Constitution provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law...." W.Va. Const. Art. III, § 10, in part. This Court has explained that "[a] 'property interest' includes not only the traditional notions of real and personal property, but also extends to those benefits to which an individual may be deemed to have a legitimate claim of entitlement under existing rules or understandings." Syl. Pt. 3, *Waite v. Civil Service Commn.*, 161 W.Va. 154, 241 S.E.2d 164 (1977).

■■■■ Procedural due process rights entitle an individual to representation by counsel, notice, an opportunity to be heard, and the right to present evidence. *See generally Barazi v. West Virginia State College*, 201 W.Va. 527, 498 S.E.2d 720 (1997); *North v. West Virginia Bd. of Regents*, 160 W.Va. 248, 233 S.E.2d 411(1977). The record clearly reveals that Ms. Marcus' case proceeded through the worker's compensation system without undue delay, and she received a permanent disability award. Ms. Marcus possessed the right to counsel and received notice and opportunity to be heard at all hearings and proceedings. A due process analysis is founded upon the concept of fundamental fairness. *State ex rel. Cogar v. Kidd*, 160 W.Va. 371, 376, 234 S.E.2d 899, 902 (1977); *see also State ex rel. Peck v. Goshorn*, 162 W.Va. 420, 422, 249 S.E.2d 765, 766 (1978) ("Due process of law is synonymous with fundamental fairness").

Upon this Court's review of the record, we find no violation of the principles of fundamental fairness embodied in the due process provisions of W.Va. Const. Art. III, § 10. Every element of Ms. Marcus' due process rights was afforded to her at each stage of the workers' compensation proceedings.

### 3. Right to a Certain Remedy

■■■■ With regard to determinations regarding the right to a certain remedy, this Court explained as follows in *O'Dell:*

> Resolution of the "certain remedy" question is fairly simple once the equal protection question is resolved. This protection is secured by Article III, Section 17 of our state constitution, which provides, in pertinent part: "The courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law[.]"

188 W.Va. at 605, 425 S.E.2d at 560. In syllabus point six of *Gibson v. West Virginia Department of Highways*, 185 W.Va. 214, 406 S.E.2d 440 (1991), this Court observed as follows:

> There is a presumption of constitutionality with regard to legislation. However, when a legislative enactment either substantially impairs vested rights or severely limits existing procedural remedies permitting court adjudication of cases, then the certain remedy provision of Article III, Section 17 of the West Virginia Constitution is implicated.

In syllabus point five of *Lewis*, this Court explained the principles underlying a certain remedy evaluation, as follows:

When legislation either substantially impairs vested rights or severely limits existing procedural remedies permitting court adjudication, thereby implicating the certain remedy provision of article III, section 17 of the *Constitution of West Virginia,* the legislation will be upheld under that provision if, first, a reasonably effective alternative remedy is provided by the legislation or, second, if no such alternative remedy is provided, the purpose of the alteration or repeal of the existing cause of action or remedy is to eliminate or curtail a clear social or economic problem, and the alteration or repeal of the existing cause of action or remedy is a reasonable method of achieving such purpose.

185 W.Va. at 686–87, 408 S.E.2d at 636–37. The only relevant limitation of rights contained in the workers' compensation legislation is the curtailment of the right of an injured worker to institute a cause of action against an employer for negligent action; rather, an employee may only institute a cause of action for deliberate intention. The employer is immune from liability for negligent action in exchange for paying workers' compensation premiums. *See* West Virginia Code § 23–2–6.[8] This Court has consistently upheld this modification of rights, and we find no merit to the Appellants' claims of absence of a certain remedy in the present case. The Appellants have not demonstrated that the workers' compensation legislative enactments have impaired Ms. Marcus' rights or severely limited existing procedural remedies. Ms. Marcus asserted her claims under the workers' compensation system and received a permanent disability award; she sought recovery against the phantom John Doe driver; she commenced a deliberate intention cause of action against her employer; she received benefits through social security; and she has recovered private insurance benefits.

### III. Conclusion

 Having reviewed the Appellants' challenges to the lower court's findings, this Court discerns no error in the lower court's determinations regarding the Appellants' deliberate intention claims. Further, we find no error in the lower court's findings regarding the Appellants' allegations regarding equal protection, due process, or the right to a certain remedy in this state's workers compensation system or in its application to a part-time employee. The structure of the West Virginia workers' compensation statutes under which a part-time or lower paid employee receives full medical benefits but receives lower temporary total disability benefits or permanent partial or total disability benefits does not violate principles of equal protection, due process, or the right to a certain remedy. We consequently affirm the decision of the lower court in all respects.

Affirmed.

---

8. West Virginia Code § 23–2–6 provides, in pertinent part, as follows:

Any employer subject to this chapter who subscribes and pays into the workers' compensation fund the premiums provided by this chapter or who elects to make direct payments of compensation as provided in this section is not liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring, after so subscribing or electing, and during any period in which the employer is not in default in the payment of the premiums or direct payments and has complied fully with all other provisions of this chapter.