482 S.E.2d 162

**STATE of West Virginia ex rel. Latta BOAN, Petitioner,**

v.

**Andrew N. RICHARDSON, Workers' Compensation Commissioner, and Songer Construction Corporation, Respondents.**

**No. 23667.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 29, 1996.

Decided Dec. 13, 1996.

M. Jane Glauser, Tracy Cook, Seibert & Kasserman, Wheeling, for petitioner.

Landon R. Brown, Xueyan Zhang, Employment Programs Litigation Unit, Charleston, for respondent, Andrew N. Richardson, Commissioner.

Mark Mascio, Washington, PA, for respondent, Songer Construction Corporation.

ALBRIGHT, Justice:

This is an original proceeding in prohibition[1] seeking to prevent the enforcement of W.Va.Code § 23–4–23(b) by respondent Commissioner of the Division of Workers' Compensation, insofar as that section re-

quires the reduction of permanent total disability benefits paid to petitioner, Latta Boan, under our Workers' Compensation Act, W.Va.Code § 23–4–1, *et seq.*, by reason of the receipt by petitioner of old age insurance benefits under the provisions of the Federal Social Security Act found in 42 U.S.C. §§ 401 and 402 (1994). Petitioner asserts that W.Va.Code § 23–4–23(b) violates Art. III, § 10 of the West Virginia Constitution. We agree and issue the writ.

## THE CONTROLLING ISSUE

The controlling issue presented to this Court by the case under consideration is whether a reduction of permanent total disability benefits under workers' compensation by one-half of the sum of old age social security insurance payable to a claimant results in unreasonable classification under the equal protection clause contained in Art. III, § 10 of our State Constitution.

Our standard for determining this issue is well-settled, as reflected by syllabus point 2 of *E.H. v. Matin,* 189 W.Va. 102, 428 S.E.2d 523 (1993), as follows:

"' " 'Where economic rights are concerned, we look to see whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relationship to a proper governmental purpose, and whether all persons within the class are treated equally. Where such classification is rational and bears the requisite reasonable relationship, the statute does not violate Section 10 of Article III of the West Virginia Constitution, which is our equal protection clause.' Syllabus Point 7, [as modified,] *Atchinson v. Erwin,* [172] W.Va. [8], 302 S.E.2d 78 (1983)." Syllabus Point 4, as modified, *Hartsock–Flesher Candy Co. v. Wheeling Wholesale Grocery Co.,* [174] W.Va. [538], 328 S.E.2d 144 (1984).' Syl. pt. 4, *Gibson v. West Virginia Department of Highways,* 185 W.Va. 214, 406

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996, and continuing until further order of this Court.

S.E.2d 440 (1991)." Syllabus Point 2, *Robinson v. Charleston Area Medical Center*, 186 W.Va. 720, 414 S.E.2d 877 (1991).

In his brief, respondent [2] asserts that the Legislature had two goals in enacting the offset provisions now under scrutiny, to help preserve the fiscal integrity of the Workers' Compensation Fund and to pursue a public policy goal against a claimant receiving duplication of benefits for the same loss.

We recognize that preserving the fiscal integrity of the Workers' Compensation Fund is a legitimate governmental concern and that the Legislature is accorded broad discretion in selecting the means of achieving that goal. Moreover, a decision by the Legislature to bolster the fiscal integrity of the fund by enacting reductions or limitations on benefits payable from the fund may be a reasonable means of addressing that concern when it is perceived that the fiscal integrity of the fund is suspect. We recently spoke to these issues in *Blankenship v. Richardson*, 196 W.Va. 726, 474 S.E.2d 906 (1996). There, we held that a limitation on permanent total disability eligibility contained in W.Va.Code § 23–4–6(n)(1) (1995) did not offend Article III, Section § 10 of the Constitution. We reiterated that "[t]he legislature's power will not be negated by this Court unless the legislative enactment violates constitutional guarantees." (citations omitted). *Blankenship* at 731, 474 S.E.2d at 911. In Part I of *Blankenship*, we also found that there has been substantial agreement that the fund has been in dire financial straits, dating by some accounts from about 1989. *Id.* at 729–31, 474 S.E.2d at 909–11. Accordingly, we are satisfied that W.Va.Code § 23–4–23 (1994) serves a legitimate governmental concern and is within the power of the Legislature if it does not otherwise offend a constitutional guarantee.

The second goal stated by counsel for respondent—pursuit of a public policy goal against claimant's receiving duplication of benefits for the same loss—sheds different light on the questions of whether the classification employed by W.Va.Code § 23–4–23

(1994) is a rational one and bears a reasonable relationship to a proper governmental purpose. Although we are not limited to the perceptions of respondent's counsel in considering the classification selected by the statute under consideration to serve proper legislative goals, we are mindful, as we indicated in *Blankenship*, that there has been broad public concern surrounding the administration of workers' compensation in the State. We are, therefore, desirous of according close attention to the views of respondent, as the chief executive officer of that agency, in the context of this case. Accordingly, we have examined with care the contention of respondent's counsel that the Legislature sought, by enacting the subject section, to avoid "the duplication of benefits for the same loss." In that exercise, we have also examined whether the statute can be sustained under the broader purpose of *avoiding the duplication of benefits, period.*

We cannot say that legislative goals of avoiding the duplication of benefits "for the same loss", or simply avoiding the duplication of benefits, are beyond the power of the Legislature. However, if the purpose of the legislation under discussion is to avoid the duplication of benefits, we must now examine whether the classification employed to achieve that goal is rational, based on social, economic, historic or geographic factors, and whether the classification bears a reasonable relationship to that goal. We perceive that the classification employed falls afoul of those tests in relation to the acknowledged proper governmental purpose asserted.

Permanent total disability awarded under workers' compensation is part of a comprehensive plan designed to rectify the results of an injury in the workplace. The payments to the claimants and other benefits are in lieu of such elements of damage in the common law tort system as lost wages, lost earning capacity, reimbursement of past and future medical expenses, past and present pain and suffering, emotional distress, and other factors. W.Va.Code §§ 23–2–6 and 23–

---

**2.** Respondent Songer Construction Corporation, petitioner's former employer, did not file a brief or appear for arguments with regard to this petition. Therefore, when we refer to respondent, we refer only to the Workers' Compensation Commissioner.

4–6 (1994 & Supp.1996); *Belcher v. J.H. Fletcher & Co.,* 498 F.Supp. 629, 630 (S.D.W.Va.1980) ("[T]he right of the injured employee to workmen's compensation has been substituted in lieu of his cause of action against the negligent employer and this remedy of compensation is an exclusive remedy.") *citing Makarenko v. Scott,* 132 W.Va. 430, 55 S.E.2d 88 (1949), *overruled on other grounds, Jones v. Laird Foundation, Inc.,* 156 W.Va. 479, 195 S.E.2d 821 (1973), and *Thornton v. Charleston Area Medical Center,* 158 W.Va. 504, 213 S.E.2d 102 (1975). The amount of permanent total disability benefits is determined under a statutory scheme that involves diverse factors, including the nature of the injury, the average wages of the claimant over a relatively short time, and the average wages earned in the State. *See* W.Va.Code § 23–4–6 (Supp.1996). Finally, we note that any wages earned by a claimant drawing permanent total disability shall be, with certain limitations, offset against permanent disability payments at a ratio of one dollar reduction in benefits to each two dollars so earned. W.Va.Code § 23–4–25 (Supp.1996).

Social security old age insurance benefits, on the other hand, are retirement benefits earned by continued employment in the work force and the attainment of the age of sixty-two or sixty-five or older.[3] *See* 42 U.S.C. §§ 402(a) and 416(*l* ) (1994). Those benefits arise primarily from participation in the national workforce. Employers and employees contribute to the system, and the benefits are, in effect, additional compensation paid by insurance as a result of having worked some period of time at some average taxable salary, except as the payments reflect a re-turn of the recipient's wage contributions to the system. *See* 42 U.S.C. § 415 (1994). Those benefits are not designed or intended to compensate for a workplace injury or replace elements of damage that might be recovered in a common law action for a such an injury. While old age social security may well provide some level of income while one who has been injured at work is not working, it is paid as a result of work history and the attainment of the age-required age, not by reason of any injury.[4] Old age social security also functions as a partial replacement of income foregone by reason of the fact that one has retired and is not working or is not working at the pace engaged in prior to retirement. Indeed, one of the probable effects of being on permanent total disability under workers' compensation prior to attaining retirement age is to reduce the product of the statutory factors of time and wages that determine the amount of old age benefits. 42 U.S.C. § 415 (1994). Finally, we note that a person on social security old age benefits may also be employed and earn additional money, limited in amount until age seventy, without any offset against those old age benefits. *See, e.g.,* 42 U.S.C. § 403(b), (f), and (h) (1994).

The factors we have just enumerated, comparing workers' compensation benefits to old age social security benefits, generate substantial doubt that the classification of "old age social security recipient" is a rational one upon which to base a reduction of workers' compensation permanent total disability benefits and substantial doubt that the classification bears a reasonable relationship to the governmental purpose of avoiding a duplica-

**3.** While benefits may also be received under social security by reason of total disability arising in the workplace or elsewhere, the workers' compensation claimant involved in this case receives old age benefits, not disability benefits. Accordingly, our decision today does not relate to receipt of social security disability. However, at a later stage in the opinion, we do discuss the rationale of federal legislation relating to workers' compensation benefits and such social security disability payments. We also do not address supplemental security income (SSI) benefits payable under the Social Security Act. 42 U.S.C. § 1381, *et seq.* (1994).

**4.** We recognize that one who has been disabled from all gainful employment for which he or she is qualified by training and experience may receive disability benefits under social security prior to retirement and that, at age sixty-five, those disability payments cease and old age social security payments are received in their stead. 42 U.S.C. § 423(a)(1) (1994). Such disability payments may or may not arise out of a workplace injury. 42 U.S.C. § 423(d) (1994). As later discussed in this opinion, federal law requires an offset against disability benefits of workers' compensation benefits received prior to the conversion of the benefits to old age insurance. 42 U.S.C. § 424a (1994).

tion of benefits, particularly a duplication of benefits for the particular loss sustained by one who is permanently disabled by reason of a workplace injury. Respondent argues that the classification is rational and reasonably related, because the workers' compensation system is a part of "an overall wage replacement system" of which, presumably, the respondent views social security old age benefits to be another part. He cites us to *Williams v. Robinson*, 180 W.Va. 290, 376 S.E.2d 304 (1988), and *Walk v. State Compensation Commissioner*, 134 W.Va. 223, 58 S.E.2d 791 (1950).

Without question, workers' compensation benefits *in part* "replace" wages lost by reason of not working because of injury and is measured, at least in part, by past wages earned. However, social security old age benefits "replace" wages lost by reason of not working because of retirement. In addition, some courts have indeed equated wage-replacement by workers' compensation with wage-replacement by old age social security benefits. In *Brooks v. Island Creek Coal Co.*, 678 S.W.2d 791 (Ky.App.1984), the Kentucky Supreme Court of Appeals upheld a statute which terminated workers' compensation benefits after the recipient became eligible for social security old age benefits on the express ground that the statute prevented "duplication of benefits". Interestingly, the statute there had been repealed before the case was decided, after being in effect only about two years. A dissenting opinion commented that the statute violated due process and equal protection and was undoubtedly repealed for that reason. *Id.* 793 (Combs, J. dissenting). In the State of Kansas, a statute somewhat similar to ours under discussion here was upheld in *Brown v. Goodyear Tire & Rubber Company*, 3 Kan.App.2d 648, 599 P.2d 1031 (1979). The *Brown* court found that their workers' compensation program was a wage-loss program.[5] In deciding

*Brown*, the Court of Appeals of Kansas relied heavily on *Estate of Baker*, 222 Kan. 127, 563 P.2d 431 (1977).[6] The *Baker* court found that a reduction in workers' compensation of fifty percent of social security benefits received by a deceased worker's dependents was presumed constitutional and had a rational basis and that both workers' compensation and social security were "wage-loss" programs. The court, while announcing that workers' compensation was a contract right under Kansas law, equated the program to a welfare benefit. We perceive that both conclusions are inapplicable in West Virginia for two reasons: (1) because in West Virginia workers' compensation is a substitute for access to the courts for redress under the tort system, and thus is not a welfare benefit; and (2) because we recognize workers' compensation as being grounded in the police power of the State and not in contract. *Rogers v. State Compensation Commissioner*, 140 W.Va. 376, 84 S.E.2d 218 (1954); *Blevins v. State Compensation Commissioner*, 127 W.Va. 481, 33 S.E.2d 408 (1945).

An offset statute also withstood constitutional challenge in Montana solely on the basis that it was rational to undertake to avoid "duplication of benefits" and was rationally related to that goal. *McClanathan v. Smith*, 186 Mont. 56, 606 P.2d 507 (1980). We have carefully reviewed these authorities and simply do not find them persuasive, on the contention that our workers' compensation system is only a wage replacement scheme.

We conclude that our workers' compensation benefits for permanent total disability are more than simply a wage replacement system. While the amount of such payments is, in fact, based on the injured worker's past employment, the benefits are also defined and limited by additional factors such as the average wages in the State. The payments

---

5. The court noted that an attempt in Kansas to require one hundred percent of old age social security benefits to be offset against workers' compensation had been repealed. It is not clear from the opinion in that case whether the statute applied to both temporary and permanent disability payments.

6. In *Estate of Baker,* the Supreme Court of Kansas upheld the constitutionality of a setoff provision providing that workmen's compensation benefits owed to a deceased employee's dependents must be reduced when such dependents were also receiving social security benefits due to the employee's death. The statute addressed in *Baker* was repealed shortly after *Baker* was decided.

provided in permanent disability cases compensate for more than lost wages because, as we have pointed out, they stand in lieu of a myriad of damage elements recognized in the tort system that are not measurable by wages earned or the average wages in the State. Moreover, as has been pointed out elsewhere, the total denial of benefits based on the assumption that one eligible to receive old age social security benefits is fully compensated for his injury by some level of workers' compensation benefits, reduced by a portion of social security benefits, raises a genuine issue as to whether the workers' compensation scheme is an adequate substitute remedy for that which might be available in the tort system for such an injury, thus implicating the validity of the system as a substitute for access to the courts. *See Industrial Claim Appeals Office v. Romero,* 912 P.2d 62, 70 n. 9 (1996).

We also find that there is no reasonable relationship between the benefits payable under workers' compensation, which the Legislature may properly seek to reduce to protect the fiscal integrity of the Workers' Compensation Fund, and an amount equal to one-half of the old age social security benefits of permanently and totally disabled workers. In other words, we do not find that the statute under discussion in fact avoids "duplication of benefits". We are aided in our conclusion by the reasoning of a Florida case which upheld a statute denying wage-loss benefits to those over sixty-five years of age solely on other rational basis grounds. In *Sasso v. Ram Property Management,* 431 So.2d 204 (Fla.App.1983), *aff'd.,* 452 So.2d 932 (1984), the court upheld a statute then in force denying what its law called "wage replacement payments" to disabled workers over the age of sixty-five.[7] While the court found other rational bases for upholding the statute, it first addressed the claim that the statute had a rational basis in the goal of avoiding a "duplication of benefits". It compared the wage-loss provisions of the Florida workers' compensation disability statute, unemployment compensation, and old age social security and said:

The common goal of all three compensating benefits does not necessarily support the ... thesis that O.A.S.I. benefits are primarily for the decent support of elderly workmen who have ceased to labor, and are intended to insure that persons removed from the active labor market because of advanced age will enjoy comfortable retirement years.... A worker, however, aged 70 or older may still be fully employed and earn the full amount of O.A.S.I. benefits to which he would otherwise be entitled, if he were fully retired. See 42 U.S.C.A. § 403(f)(3) (Supp.1982). Thus, it appears to us that O.A.S.I. benefits, although intended to assist a worker in his retirement, have evolved into a benefit that is more attributable to advanced years rather than to retirement or wage-loss. We therefore fail to see how wage-loss disability benefits and O.A.S.I. benefits can be considered duplicative. The lack of any commonality of purpose saps the statute of rationality, assuming its purpose is the avoidance of double-dipping.

*Id.* at 219 (citations omitted).

Considering the social, economic, and historic factors underlying the adoption and administration of our Workers' Compensation Act, on the one hand, and the factors underlying old age social security on the other, we likewise fail to see how the permanent total disability payments awarded in this case can be considered duplicative of old age social security benefits. We agree with the Florida court's conclusion and find that the lack of any commonality of purpose saps W.Va.Code § 23–4–23 (1994) of rationality, assuming its purpose to be the avoidance of double-dipping or duplication of benefits. Our view is reinforced by the fact that the two programs under discussion compute benefits on entirely different bases and compensate for entirely different eventualities, as we have detailed.

■ Moreover, while any reduction of benefits can be seen as reasonably related to a legitimate goal of preserving the fiscal integrity of the Workers' Compensation Fund, we conclude, for the same reasons, that the classification of "old age social security recipi-

---

**7.** It appears that Florida has now adopted a scheme similar to the West Virginia statute un-

der consideration. § 440.15, *Florida Statutes Annotated.*

ents" is not a reasonable one, where the purpose of such classification is to impose a reduction of permanent total disability benefits in pursuit of the goal of enhancing the fiscal integrity of the Workers' Compensation Fund. We also reach that conclusion because permanent total disability payments under workers' compensation, while measured in part by prior wages, are by definition intended to compensate for several factors other than lost wages, past, present, or future, and are not just "wage replacement" and thus are neither welfare benefits or benefits "attributable to advanced years".

Respondent also asserts that because the offset of unemployment benefits against workers' compensation benefits has been upheld, and the offset of workers' compensation benefits against *disability* benefits payable under social security has been found not to violate equal protection, this Court ought to apply like reasoning in the case of permanent total disability awards and old age social security benefits. *See Richardson v. Belcher*, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); 42 U.S.C. § 424a (1994); 4 Larson, *Workmen's Compensation Law*, § 97.10 (1996). We are not persuaded.

Unemployment compensation and workers' compensation both arise from involuntarily interrupted employment. There is a readily identifiable commonality between payments made for the interruption of work by reason of injury and payments made for the interruption of work by reason of its unavailability. With respect to social security disability and disability awards under workers' compensation, there is a like commonality of purpose. Eligibility for the two programs arises simultaneously and may often arise, at least in part, from the same cause of injury in the workplace. Both social security disability and workers' compensation contemplate payment for the involuntary interruption of work. The requirement of eligibility for social security disability insurance, that a

recipient be unable to engage in "substantial gainful activity",[8] conceptually includes anyone permanently and totally disabled for workers' compensation purposes. Lastly, with respect to the particular statute we have under consideration, we note that the social security system has not attempted to impose an offset for workers' compensation against old age social security. We suspect that such an offset has not been attempted because it is virtually impossible to calculate the extent to which the two programs constitute any "duplication of benefits."

 In reaching our conclusions, we have been mindful of the principles of law that:

"In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. [*W.Va. Const.* Art. V, § 1.] Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt." Syl. Pt. 1, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W.Va. 740, 143 S.E.2d 351 (1965).' Syl. Pt. 2, *West Virginia Public Employees Retirement System v. Dodd*, 183 W.Va. 544, 396 S.E.2d 725 (1990).

*State ex rel. Blankenship v. Richardson*, 196 W.Va. 726, 731, 474 S.E.2d 906, 911 (1996), *quoting* syllabus point 1, *Lewis v. Canaan Valley Resorts, Inc.*, 185 W.Va. 684, 690, 408 S.E.2d 634, 640 (1991). Giving full sway to

---

8. Under 42 U.S.C. § 423(d)(1) (1994):
 (1) The term "disability" means—
 (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; or

 (B) in the case of an individual who has attained the age of 55 and is blind ..., inability by reason of such blindness to engage in substantial gainful activity requiring skills or abilities comparable to those of any gainful activity in which he has previously engaged with some regularity and over a substantial period of time.

these principles and the principles of *E.H. v. Matin, supra,* set out herein, we cannot conclude that W.Va.Code § 23–4–23 (1994) withstands even the minimum scrutiny applicable in economic rights cases such as this one.

 We have also reviewed whether the statute in question treats all persons in a class equally. We note, and now address, the fact that the statute under discussion prescribes a reduction of benefits for those totally disabled persons receiving old age benefits who are *permanently and totally* disabled under workers' compensation and does not affect the benefits of persons receiving old age social security benefits who are *permanently, but partially,* disabled under workers' compensation.

The Supreme Court of Colorado considered a similar scheme for reducing workers' compensation benefits, premised in part on the avoidance of duplication of benefits, in *Industrial Claim Office v. Romero,* 912 P.2d 62 (1996). There, the discrimination was even more egregious, because the reduction of benefits for permanent total disability occurred upon attaining the age of sixty-five, under the legislative assumption that persons would receive old age social security benefits at that age. Proponents of the statute defended it on the basis that the statute also provides that those receiving permanent total disability who were under sixty-five received a "trade-off" increase of two percent in their awards. After first finding that such discrimination between those over and under the age of sixty-five, and the funding of an increase in benefits for some by a decrease in the benefits of others, was arbitrary, unfair, and irrational, the court addressed the matter of the discrimination in favor of those under sixty-five receiving partial disability awards. The court there said:

> In summary, even if we assume that preventing duplication of benefits and reducing the cost of workers' compensation insurance are legitimate governmental purposes, section 8–42–111(5) is not rationally related to achieving those purposes because it eliminates benefits for totally disabled claimants who are age sixty-five or older, but provides such benefits for partially disabled claimants of the same age. Such disparate treatment of similarly situated individuals violates the equal protection guarantees of the state and federal constitutions and cannot be upheld.

912 P.2d at 69–70.

We agree with the reasoning of the Colorado Court that the discrimination between persons receiving permanent partial disability and those receiving permanent total disability is constitutionally defective. We can find no provision in the Workers' Compensation Act parallel to W.Va.Code § 23–4–23 (1994), reducing permanent partial disability awards under workers' compensation by reason of the receipt of old age social security benefits. Thus, as in Colorado, there is a failure of equal treatment here, in that our statute reduces benefits for claimants who are permanently and totally disabled and who are receiving old age social security, while other claimants also receiving old age social security, who are permanently, but partially, disabled suffer no reduction of workers' compensation benefits. Accordingly, we find that W.Va.Code § 23–4–23 (1994) violates equal protection by reducing workers' compensation benefits for claimants who are permanently and totally disabled and who are receiving old age social security, while other claimants also receiving old age social security, who are permanently, but partially, disabled, suffer no reduction of benefits, and thereby not treating those similarly situated equally under Art. III, § 10 of the West Virginia Constitution. The correction of this deficiency in the statute under question will not cure its overall invalidity, but this deficiency is yet another reason why the statute may not be enforced.

In considering the issue before us, we also examined the effect of this legislation on persons receiving old age social security benefits who may continue or commence new employment in some capacity, perhaps with reduced risk of workplace injury or with greater risk, after beginning the receipt of old age social security benefits. In such employment, those "retired" persons may well be covered by workers' compensation. "Retired" persons so employed, like their counterparts not yet eligible for or receiving old age social security, may be injured and thereby become entitled to workers' compensation benefits, including permanent partial or permanent total disability benefits by reason of such injury. It appears that, un-

der W.V.Code § 23-4-23 (1994), any permanent total disability award to those "retired" workers would be subject to reduction *by reason of social security benefits based on work before their "retirement".* The courts of Michigan and of Florida[9] have sustained similar provisions—based directly on age or on eligibility for social security—on the minimum scrutiny "rational basis" that such provisions of workers' compensation laws, similar to ours under discussion, encourage retirement of older workers and make way for young workers.

In addition to the reasons previously assigned for rejecting the statute under discussion, we also specifically reject the argument that it encourages retirement of older workers and makes way for young workers. We are dealing here with determining the amount of benefits due an injured worker for a particular injury, in lieu of any damages due in a court of law for such injury. A reduction in the benefits due for an injury already incurred because the worker injured is in a class of individuals who receive old age social security for prior employment bears absolutely no reasonable relationship to a legitimate government objective of encouraging retirement and making way for the young. The injured worker receiving social security by reason of prior employment is already "retired"; the unreasonable result of the application of this statute to the facts under discussion is to take from the injured "retired" worker a part of his old age social security, earned by reason of prior employment, and to devalue the injury of that "retired" worker, simply because he or she successfully completed a first career and, perhaps, has embarked on another. That is not a legitimate or rational purpose or function of workers' compensation.

Accordingly, we hold that W.Va.Code § 23-4-23 (1994) violates Art. III, § 10 of the West Virginia State Constitution in that it fails to provide the equal protection of the Workers' Compensation Act to old age social security recipients who may have been, or may be, injured in their employment and are thereby permanently and totally disabled within the meaning of our Workers' Compensation Act. We conclude that the statute is defective in creating the classification of "old age social security recipient" and reducing benefits for those persons, that such classification, as here applied, bears no reasonable relationship to a proper governmental purpose of avoiding duplication of benefits, and that it results in all persons within the class of "old age social security recipients" not being treated equally.

Therefore, the writ prayed for is awarded.

Writ granted.

RECHT, Judge, sitting by temporary assignment.

WORKMAN, J., reserves the right to file a dissenting opinion.

9. *Cruz v. Chevrolet Grey Iron, Div. of Gen. Motors,* 398 Mich. 117, 247 N.W.2d 764 (1976); *Knuckles v. General Motors Corp.,* 172 Mich.App. 125, 431 N.W.2d 428 (1988), *reversed on other grounds,* 437 Mich. 889, 464 N.W.2d 711 (1991); *Sasso v. Ram Property Management,* 431 So.2d 204 (1983), *aff'd.,* 452 So.2d 932 (1984).