**IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

**January 2017 Term**

_____

No. 16-0043

_____

**FILED**

**June 8, 2017**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**WILLIAM F. CRAWFORD,**
**Claimant Below, Petitioner**

**V.**

**WEST VIRGINIA DEPARTMENT OF**
**CORRECTIONS - WORK RELEASE,**
**Respondent Below, Respondent**

_____

**Appeal from the Workers' Compensation Board of Review**
**Claim No. 2014016722**
**Appeal No. 2050637**

**AFFIRMED**

_____

**Submitted: May 16, 2017**
**Filed: June 8, 2017**

John Skaggs
The Calwell Practice, LC
Charleston, West Virginia
Attorney for the Petitioner

Steven K. Wellman
Jenkins Fenstermaker, PLLC
Huntington, West Virginia

Jonathan J. Jacks
Lisa Warner Hunter
Pullin, Fowler, Flanagan,
Brown & Poe, PLLC
Charleston, West Virginia
Attorneys for the Respondent

**Attorney for Amicus Curiae,**
**Defense Trial Counsel of West Virginia**

**JUSTICE DAVIS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

      1.     W. Va. Code § 23-4-1e(b) (2011) (Supp. 2016) prohibits a person confined in a state correctional facility or jail who is participating in a work-release program from receiving workers' compensation benefits for any injury sustained while engaged in such work during the person's period of confinement.

**Davis, Justice:**

In this appeal from an order of the Workers' Compensation Board of Review ("the Board"), Mr. William F. Crawford ("Mr. Crawford"), petitioner herein and claimant below, challenges the Board's finding that he is not eligible to receive workers' compensation benefits for an injury he sustained while he was an inmate participating in a work-release program.[1] Having considered the briefs,[2] the record submitted on appeal, the relevant law, and the oral argument presented by the parties, we affirm.

## I.

## FACTUAL AND PROCEDURAL HISTORY

This case involves a former inmate, Mr. Crawford, who seeks workers' compensation benefits for an injury he sustained during his period of confinement at the Charleston Work Release Center.[3] In order to be placed at the Charleston Work Release Center, Mr. Crawford was required to sign a "Contract for Placement at a Work Release

---

[1]The case was before the Board on appeal from a ruling of the Worker's Compensation Office of Judges ("OOJ"). The Board's order affirmed the ruling of the OOJ that, in turn, had affirmed the decision of the Workers' Compensation Claims Administrator.

[2]We recognize the participation of Amicus Curiae, the Defense Trial Counsel of West Virginia, who filed a brief in support of the respondent, the Department of Corrections. We value the contribution of the amicus and will consider its brief in conjunction with the parties' arguments.

[3]The Charleston Work Release Center has been replaced by the Charleston Correctional Center, which was opened on May 1, 2015.

1

Center." The contract set out certain conditions for participation in a work-release program, and provided that Mr. Crawford could be returned to his parent institution at any time. After completing a thirty-day probationary period, Mr. Crawford was assigned to a road crew working for the West Virginia Division of Highways ("DOH"). Inmates at the Charleston Work Release Center, including Mr. Crawford, were able to provide work to DOH by virtue of a "Statewide Convict Workforce Agreement" made between DOH and the West Virginia Division of Corrections ("Corrections"),[4] the respondent herein and below. Under the particular agreement in effect at the time relevant to this appeal, which was dated April 26, 2012, Corrections would make available to DOH "a number of crews, which will vary both according to availability of inmates and the seasonal needs of [DOH]." In return, DOH agreed to "reimburse Corrections for inmate pay." In addition, pursuant to the express terms of the agreement,

> [DOH] and Corrections agree that the inmates performing services under this agreement *will not be employees of the State entitling them to any benefits such employees might have including*, but not limited to, insurance, *worker* [sic] *compensation*, benefits, pensions, sick, and annual leave.

---

[4]The respondent to this appeal has been incorrectly identified in the style of the case as "Department of Corrections." We note that the Legislature reorganized the executive branch of state government in 1989. That reorganization, in relevant part, incorporated the Department of Corrections into the Department of Public Safety and designated it as the *Division* of Corrections. *See* W. Va. Code §§ 5F-2-1(e)(8) & (j) (1989) (Repl. Vol. 1990). Thereafter, the Department of Public Safety was redesignated as the Department of Military Affairs and Public Safety. *See* W. Va. Code §§ 5F-2-1(e)(7) & (j) (1992) (Repl. Vol. 1993). The relevant provisions are now found at W. Va. Code §§ 5F-2-1(i)(8) & (o) (2011) (Repl. Vol. 2015).

2

(Emphasis added). In order to be on a road crew, Mr. Crawford also was required to sign a Corrections document titled "Contract for Placement on Road Crew or Community Crew." This document established various restrictions for inmate participation on a road crew. For example, pursuant to the contract, "[DOH] staff members have no authority to excuse an inmate Road Crew member from work." Moreover, "[a]ll inmate Road Crew members must remain on their designated crew unless given written permission to leave that assigned employment placement. An inmate Road Crew member will not be permitted to leave the assigned crew until replaced by another person, except in cases of parole or discharge." Likewise, under the contract, a Corrections "Employment Officer may terminate an inmate's work assignment at any time or may reassign an inmate to a different work crew at his/her discretion."

While working on a road crew serving DOH, Mr. Crawford's hand was severely injured on March 28, 2013, when it was caught in a wood chipper. His injuries resulted in surgery and hospitalization, with medical bills in excess of $90,000 that were paid by Corrections. Mr. Crawford was paroled soon after his release from the hospital.

Mr. Crawford initiated a claim for workers' compensation and, on November 15, 2013, the Claims Administrator rejected Mr. Crawford's application for benefits based upon its determination that he did not suffer an injury in the course of and resulting from his

3

employment. The claims administrator found that Mr. Crawford was an inmate and not an employee as defined under West Virginia Code § 23-4-1(a) (2008) (Repl. Vol. 2010). The Office of Judges ("OOJ") affirmed the decision of the claims administrator. The OOJ found that Mr. Crawford was still incarcerated and an inmate while housed at the Charleston Work Release Center. Moreover, the work agreement between Corrections and DOH made clear that the workers from work release centers were considered inmates and not employees. The OOJ concluded that, pursuant to West Virginia Code § 23-4-1e(b) (2011) (2016 Supp.), Mr. Crawford was ineligible to receive workers' compensation benefits for an injury he received while in a work-release center performing work for DOH. The Board affirmed the Order of the OOJ. This appeal followed. By order entered on February 16, 2017, this Court directed the parties to file supplemental briefs. The case subsequently was submitted on briefs and oral argument.

## II.

## STANDARD OF REVIEW

Because the Board decision under review affirmed prior rulings by the claims administrator and the OOJ, the standards for this Court's review of the Board's rulings are set out in W. Va. Code §§ 23-5-15(b & c) (2005) (Repl. Vol. 2010):

> (b) In reviewing a decision of the board of review, the supreme court of appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions, in accordance with subsections (c) and (d) of

4

this section.

> (c) If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the supreme court of appeals *only if the decision is in clear violation of constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record.* The court may not conduct a de novo re-weighing of the evidentiary record. If the court reverses or modifies a decision of the board pursuant to this subsection, it shall state with specificity the basis for the reversal or modification and the manner in which the decision of the board clearly violated constitutional or statutory provisions, resulted from erroneous conclusions of law, or was based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record.

(Emphasis added). We have previously recognized, however, that this Court "review[s] *de novo* legal conclusions of the Workers' Compensation Board of Review. *Johnson v. W. Va. Office of Ins. Comm'r*, 226 W. Va. 650, 654, 704 S.E.2d 650, 654 (2010)." *Sheena H. ex rel. Russell H. ex rel. L.H. v. Amfire, LLC*, 235 W. Va. 132, 135, 772 S.E.2d 317, 320 (2015). Finally, to the extent that our resolution of the case *sub judice* requires that we engage in statutory construction, our review likewise is *de novo*. *See* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). With regard for the forgoing standards, we address the dispositive issues herein raised.

5

# III.

# DISCUSSION

To resolve the instant matter, we must address two issues raised in this appeal: (1) Whether an inmate who is participating in a work-release program and is assigned to work for a state agency is prohibited from receiving workers' compensation benefits by W. Va. Code § 23-4-1e(b) (2011) (Supp. 2016); and (2) Whether denying workers' compensation benefits to an inmate who is participating in a work-release program violates equal protection.[5] We address these issues in turn.

## A. W. Va. Code § 23-4-1e(b)

Mr. Crawford contends that W. Va. Code § 23-4-1e(b), which he characterizes as excluding workers' compensation coverage for work "imposed by the administration of the state correctional facility or jail," is unambiguous and does not exclude workers' compensation coverage for work-release employment because such employment is *voluntary*

---

[5]Mr. Crawford additionally attempts to argue that denying him workers' compensation benefits amounts to cruel and unusual punishment. We reject this issue as inadequately briefed. *See State v. White*, 228 W. Va. 530, 541 n.9, 722 S.E.2d 566, 577 n.9 (2011) ("Typically, this Court will not address issues that have not been properly briefed."); *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are . . . mentioned only in passing but are not supported with pertinent authority, are not considered on appeal."); *State, Dep't of Health & Human Res., Child Advocate Office v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995) ("[A] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim[.]" (internal quotations and citations omitted)). *Accord* W. Va. R. App. P. Rule 10(c)(7).

6

as opposed to being *imposed* by the administration of the state correctional facility or jail. In support of his argument, he relies on Syllabus point 5 of *State ex rel. Gillespie v. Kendrick*, 164 W. Va. 599, 265 S.E.2d 537 (1980), which refers to court-granted work release pursuant to W. Va. Code § 62-11A-1 and describes that program as a privilege.

Agreeing that W. Va. Code § 23-4-1e(b) is unambiguous, Corrections argues that its plain language precludes work release inmates from receiving workers' compensation benefits. Corrections disagrees with Mr. Crawford's characterization of his work for DOH as voluntary. Rather, Corrections contends that, while inmates may voluntarily request the privilege of participating in the work-release program, once an inmate is accepted into the program the requirement of work is *imposed* on inmates as a condition of their continued participation in the work-release program.[6] If for any reason an inmate fails or refuses to work, the inmate is returned to the correctional facility from whence he or she came to resume serving his or her term of incarceration at that facility. *See, e.g.*, Syl., *Craigo v. Legursky*, 183 W. Va. 678, 398 S.E.2d 160 (1990) ("A convict confined in the penitentiary or medium security prison who is transferred to a work release and/or study center established pursuant to W. Va. Code § 25-1-3 (1977) remains in the custody of officers of

---

[6]Corrections explains that, during his first month housed at the Charleston Work Release Center, Mr. Crawford, like other work-release inmates, was required to work within the facility. Thereafter, he was given the option of finding work in the private sector that might extend beyond his incarceration or performing work for DOH.

7

the Department of Corrections. Consequently if such convict absconds from a work release and/or study center, he shall be deemed guilty of felony escape pursuant to W. Va. Code § 62-8-1 (1959)."). Corrections reasons that, because Mr. Crawford would be returned to his original facility if he violated his work agreement, the work is imposed and not voluntary.

In our endeavor to settle the meaning of W. Va. Code § 23-4-1e(b) in the context of the facts herein presented, we observe the well-established principle that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). Therefore, "[a] statutory provision [that] is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951). In other words, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W. Va. 573, 587, 466 S.E.2d 424, 438 (1995). *See also Foster Found. v. Gainer*, 228 W. Va. 99, 110, 717 S.E.2d 883, 894 (2011) ("Statutes whose language is plain must be applied as written."). On the other hand, "[a] statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992). *See also Foster Found. v. Gainer*, 228 W. Va. at 110, 717 S.E.2d at 894 ("Statutes . . . whose language is

8

ambiguous must be construed before they can be applied.").

Pursuant to the relevant portion of W. Va. Code § 23-4-1e,

(b) Notwithstanding any provision of this code to the contrary, *no person confined in a state correctional facility or jail who suffers injury or a disease in the course of and resulting from his or her work during the period of confinement which work is imposed by the administration of the state correctional facility or jail* and is not suffered during the person's usual employment with his or her usual employer when not confined *shall receive benefits under the provisions of this chapter for the injury or disease*[.]

(Emphasis added).[7]  While we agree that the foregoing language is plain, we disagree with

_____

[7]The full text of this code section provides:

(b) Notwithstanding any provision of this code to the contrary, no person confined in a state correctional facility or jail who suffers injury or a disease in the course of and resulting from his or her work during the period of confinement which work is imposed by the administration of the state correctional facility or jail and is not suffered during the person's usual employment with his or her usual employer when not confined shall receive benefits under the provisions of this chapter for the injury or disease: Provided, That individuals otherwise confined in a state correctional facility or jail, or at a juvenile services facility, and working in a program authorized by sections fourteen [W. Va. Code § 25-7-14] or sixteen [W. Va. Code § 25-7-16] of article seven, chapter twenty-five of this code, shall be eligible to receive benefits under the provisions of this chapter while working in an authorized program.  The coverage for benefits may be obtained either by the private entity or by agreement with the state agency as specified in subsection (5), subsection (a) of sections fourteen [W. Va. Code § 25-7-14] and

(continued...)

9

the interpretation of that language proposed by the parties to this appeal. Disagreement as to the meaning of the statue does not, however, render the statute vague. *See T. Weston, Inc. v. Mineral Cty.*, 219 W. Va. 564, 568, 638 S.E.2d 167, 171 (2006) ("The fact that parties disagree about the meaning of a statute does not itself create ambiguity or obscure meaning."); *In re Resseger's Estate*, 152 W. Va. 216, 220, 161 S.E.2d 257, 260 (1968) ("That the parties disagree as to the meaning or the applicability of each [statutory] provision does not of itself render either provision ambiguous or of doubtful, uncertain or obscure meaning.").

The plain language of the foregoing statutory provision identifies two types of work: (1) work performed during the period of confinement which work is imposed by the administration of the state correctional facility or jail; and (2) the person's usual employment with his or her usual employer when not confined. Under the statute, workers' compensation

---

[7](...continued)
sixteen [W. Va. Code § 25-7-16] of article seven, chapter twenty-five of this code.

W. Va. Code § 23-4-1e(b) (2011) (Supp. 2016). The parties agree that the exceptions contained in W. Va. Code § 25-7-14 & § 25-7-16, which pertain to the Prisoners' Industries Enhancement ("PIE") program that apparently has never been implemented, do not apply to Mr. Crawford. Corrections asserts that the different treatment afforded the PIE program, which was crafted to comply with federal law, was to ensure that participating private industries received no unfair advantage from using inmate workers. The purpose was not to protect inmate workers. *See McMaster v. State of Minn.*, 30 F.3d 976, 981 (8th Cir. 1994) ("We conclude that Congress' purpose in enacting the Ashurst-Sumners Act was to protect private business, not to protect the inmate worker.").

benefits are not provided to a person confined in a state correctional facility or jail for an injury sustained while the person is engaged in the first type of work, *i.e.,* work performed during the inmate's period of confinement, which, as the statute plainly recognizes, necessarily "is imposed by the administration of the state correctional facility or jail." Workers' compensation benefits are, however, available to a person confined in a state correctional facility or jail for an injury sustained while he or she is engaged in the second type of work, that is, the person's usual employment with his or her usual employer when not confined.

Accordingly, we now expressly hold that W. Va. Code § 23-4-1e(b) (2011) (Supp. 2016) prohibits a person confined in a state correctional facility or jail who is participating in a work-release program from receiving workers' compensation benefits for any injury sustained while engaged in such work during the person's period of confinement.[8]

Applying the foregoing holding to the facts of the instant case, it is clear that Mr. Crawford is not entitled to workers' compensation benefits for the injury he sustained. Mr. Crawford was injured during his period of confinement while participating in a work-release program through the Charleston Work Release Center, which is a state correctional

---

[8]We reach this holding based upon Mr. Crawford's employment by a state agency, and we render no decision regarding an incarcerated inmate's employment by a private employer, as those are not the facts presently before us.

facility.  *See* W. Va. Code § 25-1-3(d) (2013) (Repl. Vol. 2013) (providing "[t]he Commissioner of Corrections may establish work and study release units *as extensions and subsidiaries of those state institutions under his or her control and authority*" (emphasis added)); Syl., in part, *Craigo v. Legursky*, 183 W. Va. 678, 398 S.E.2d 160 ("A convict confined in the penitentiary or medium security prison who is transferred to a work release and/or study center established pursuant to W. Va. Code § 25-1-3 [(2013) (Repl. Vol. 2013)] remains in the custody of officers of the Department of Corrections.").  Therefore, we find no error in the Board's ruling that Mr. Crawford was not entitled to workers' compensation benefits pursuant to W. Va. Code § 23-4-1e(b).[9]

## B.  Equal Protection

Mr. Crawford additionally argues that his equal protection rights have been violated insofar as he is a member of a class in which all persons are not treated equally.  He

---

[9]Also raised in this appeal is the question of whether Mr. Crawford qualified as an "employee" pursuant to W. Va. Code § 23-2-1a (1999) (Repl. Vol. 2010).  However, this question is rendered moot by our determination that Mr. Crawford is barred from receiving workers' compensation benefits by operation of W. Va. Code § 23-4-1e(b), which, by its own terms, prevails over other provisions of the Code.  *See* W. Va. Code § 23-4-1e(b) (beginning with "[n]otwithstanding any provision of this code to the contrary . . . .").  *See also State ex rel. Canterbury v. Paul*, 205 W. Va. 665, 669 n.2, 520 S.E.2d 662, 666 n.2 (1999) ("'Moot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or property, are not properly cognizable by a court.'" (quoting Syl. pt. 1, *State ex rel. Lilly v. Carter*, 63 W. Va. 684, 60 S.E. 873 (1908))).  *Accord* Syl. pt. 4, *Cline v. Mirandy*, 234 W. Va. 427, 765 S.E.2d 583 (2014); Syl. pt. 1, *State ex rel. Durkin v. Neely*, 166 W. Va. 553, 276 S.E.2d 311 (1981).

contends that some incarcerated prisoners who work while serving their period of confinement, *i.e*., those who work for private employers, are mandated to receive workers' compensation, while those, such as himself, who work for a state agency, are not. Mr. Crawford avers that, had he been doing the same work for a private employer, he would have received workers' compensation benefits. He argues that the denial of workers' compensation benefits to work-release inmates serving a state agency advances no reasonable government interest, nor is there a rational basis for such a denial.[10]

Corrections contends that Mr. Crawford's argument fails because he cannot establish that he was discriminated against as compared to other incarcerated individuals. In this regard, Corrections avers that Mr. Crawford had the opportunity to seek private employment. Corrections further asserts that it has not been established in the record that work-release inmates working in the private sector actually receive workers' compensation benefits.[11] Nevertheless, Corrections contends that, even if discrimination is found, any such

_____

[10]Mr. Crawford additionally asserts that he was released from custody upon his release from the hospital. He claims that his lack of treatment has put him at a significant disadvantage in re-entering society. Mr. Crawford fails to identify any specific treatment that was denied to him. Instead, according to the appellate record, Mr. Crawford received treatment for his injury at a cost in excess of $90,000, which amount was paid by Corrections.

[11]The only evidence in the record pertaining to whether work release inmates working in the private sector receive workers' compensation was the following deposition testimony by Mr. Jeff Stinnett, Administrator of the Charleston Work Release Center:

(continued...)

13

discrimination bears a rational basis to a proper governmental purpose in that there is a substantial governmental interest in maintaining fair business practices and a fiscally sound state budget. Corrections explains that, if the private sector was permitted to employ inmates without providing the benefits afforded to other employees, the businesses would receive an unfair advantage in competition versus other private businesses not utilizing inmates. Corrections finally argues that imposing a duty on state agencies to provide workers' compensation for inmate workers would have a substantial negative impact on the State's budget.

The right to equal protection is expressly provided by the Fourteenth Amendment to the United States Constitution, which declares in relevant part that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." Likewise, this Court has recognized that "West Virginia's constitutional equal protection principle is a part of the Due Process Clause found in Article III, Section 10 of the West Virginia Constitution." Syl. pt. 4, *Israel by Israel v. West Virginia Secondary Sch. Activities*

---

[11](...continued)

  Q. And would those wages [earned by inmates working for private employers] be reported[,] if you know, by the employers as towards their Workers' Compensation premiums?

  . . . .

  A. As far as I know, yes.

*Comm'n*, 182 W. Va. 454, 388 S.E.2d 480 (1989). In practice, "[e]qual protection of the law

is implicated when a classification treats similarly situated persons in a disadvantageous

manner. The claimed discrimination must be a product of state action as distinguished from

a purely private activity." Syl. pt. 2, *id. Accord* Syl. pt. 4, *Kanawha Cty. Pub. Library Bd.*

*v. Board of Educ. of Cty. of Kanawha*, 231 W. Va. 386, 745 S.E.2d 424 (2013).

Under the facts herein presented, we need not address the existence of a

rational basis or whether the denial of workers' compensation benefits to inmates bears a

reasonable relationship to a proper governmental purpose,[12] because we find there has been

[12]This Court has held that,

"''''''[w]here economic rights are concerned, we look to
see whether the classification is a rational one based on social,
economic, historic or geographic factors, whether it bears a
reasonable relationship to a proper governmental purpose, and
whether all persons within the class are treated equally. Where
such classification is rational and bears the requisite reasonable
relationship, the statute does not violate Section 10 of Article III
of the West Virginia Constitution, which is our equal protection
clause." Syllabus Point 7, [as modified,] *Atchinson v. Erwin*,
[172] W. Va. [8], 302 S.E.2d 78 (1983).' Syllabus Point 4, as
modified, *Hartsock-Flesher Candy Co. v. Wheeling Wholesale
Grocery Co.*, [174] W. Va. [538], 328 S.E.2d 144 (1984)." Syl.
pt. 4, *Gibson v. West Virginia Department of Highways*, 185
W. Va. 214, 406 S.E.2d 440 (1991).' Syllabus Point 2,
*Robinson v. Charleston Area Medical Center*, 186 W. Va. 720,
414 S.E.2d 877 (1991)." Syllabus point 2, *E.H. v. Matin*, 189
W. Va. 102, 428 S.E.2d 523 (1993).

(continued...)

15

no violation of Mr. Crawford's equal protection rights. Assuming, *arguendo*, that inmates who work for private businesses through the work-release program do, in fact, receive workers' compensation benefits, the receipt of such benefits does not demonstrate disadvantageous treatment of inmates who instead work for a state agency. Clearly both classes of inmates receive treatment for work-related injuries. With respect to privately employed inmates who presumptively receive workers' compensation benefits, we note that the Legislature has declared its intention that the Workers' Compensation Code operate, in part, "to assure the quick and efficient delivery of indemnity and medical benefits to injured workers." W. Va. Code § 23-1-1 (2007) (Repl. Vol. 2010). Likewise, inmates working for a state agency, such as DOH, receive treatment for their injuries provided by Corrections: "[t]here is no question that a governmental unit, such as [a] Correctional Center, has an 'obligation to provide medical care for those whom it is punishing by incarceration.' *Estelle v. Gamble*, 429 U.S. at 103, 97 S. Ct. at 290, 50 L. Ed. 2d at 259 (1976)." *Nobles v. Duncil*, 202 W. Va. 523, 533, 505 S.E.2d 442, 452 (1998). It is clear, therefore, that all inmates participating in a work-release program receive treatment for their injuries sustained in the course of and resulting from their work.[13] In the case of inmates assigned to a state agency,

---

[12](...continued)
Syl. pt. 1, *State ex rel. Boan v. Richardson*, 198 W. Va. 545, 482 S.E.2d 162 (1996), *modified on other grounds as recognized by Fitzgerald v. Fitzgerald*, 219 W. Va. 774, 783, 639 S.E.2d 866, 875 (2006).

[13]We recognize that there are disability benefits provided under workers' compensation in addition to medical treatment benefits; however, the parties have not raised
(continued...)

16

treatment is paid for by Corrections. Indeed, Mr. Crawford has admitted that Corrections paid more than $90,000 for the treatment of his injury. In the case of inmates working for private employers who subscribe to workers' compensation, treatment is paid for by the employer through such coverage.[14] Under these circumstances, we find no equal protection violation.

## IV.

## CONCLUSION

Based upon the foregoing discussion, we affirm the December 21, 2015, decision of the Workers' Compensation Board of Review finding that Mr. Crawford is not

---

[13](...continued)
those specific benefits in their equal protection arguments. Instead, the parties have referred to workers' compensation in a general sense. Because the parties have not briefed specific workers' compensation disability benefits, we will not address the same.

[14]Mr. Crawford relies on *State ex rel. Boan v. Richardson*, 198 W. Va. 545, 482 S.E.2d 162 (1996), in support of his equal protection argument. We find this case is distinguishable and not supportive of Mr. Crawford's position. In *Boan*, this Court found that W. Va. Code § 23-4-23 (1994) violated equal protection insofar as it reduced permanent total disability benefits to individuals receiving old age social security benefits. The conclusion reached by this Court was based upon the fact that old age social security benefits served a different purpose than permanent total disability benefits. In the instant matter, all inmates receive treatment for work-related injuries, it is merely the source of payment for those injuries that differs.

17

eligible to receive workers' compensation benefits for an injury he sustained while he was an inmate participating in a work-release program.

Affirmed.